**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **MARSHALL E. BRANDON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **Civil Action No.  2:07-cv-466-MHT-SRW** |
| | ) |
| **DENNIS MEEKS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**DEFENDANTS' SPECIAL REPORT**</u>

COME NOW Sheriff Dennis Meeks, Jail Administrator Preston Hughes, and Officer Jeremy Lane, the Defendants in the above-styled cause, and submit their Special Report to the Court.

**INTRODUCTION**

On May 24, 2007, Plaintiff filed his Complaint with this Court, naming Dennis Meeks, the Covington County Sheriff, Preston Hughes, the Covington County Jail Administrator, and Jeremy Lane, a former Covington County Jailer.[1] (Doc. 1.) On May 29, 2007, the Court ordered Defendants to file a Special Report. (Doc. 4.) On July 6, 2007, the Defendants filed a Motion for Extension of Time to File Their Special Report and Answer. (Doc. 10.) On July 9, 2007, the Court granted the Defendants' Motion and extended the time for the filing of a Special Report to August 17, 2007. (Doc. 11.)

**PLAINTIFF'S ALLEGATIONS**

In his Complaint, the Plaintiff appears to name two federal claims. First, the Complaint appears to allege an Eighth Amendment claim for arising out of a strip search in the Covington

---

[1] Officer Lane has resigned as an employee of the Covington County Jail and has taken a job as a corrections officer in the Conecuh County Jail. (Exhibit A, Affidavit of Dennis Meeks, ("Meeks Aff.,") ¶ 13; Exhibit B, Declaration of Jeremy Lane, ("Lane Decl.,") ¶ 18.)

County Jail.  Second, the Plaintiff appears to allege a Fourteenth Amendment claim for sexual harassment arising out of an alleged subsequent cell search.[2]  Finally, the Complaint could be construed as alleging any number of state law claims, including assault, battery, and intentional infliction of emotional distress.

The Plaintiff seeks "justis [sic] before someone else suffers the same fate."  (Doc. 1.) The Defendants are unclear as to what kind of relief the Plaintiff is seeking in his Complaint and contend that because the Plaintiff fails to state any claim for relief, his Complaint is due to be dismissed under Rule 12(b)(6), Fed. R. Civ. P.  Out of an abundance of caution, however, the Defendants will respond to this vague demand as if it sought injunctive relief and compensatory and punitive damages, in the event that this Court construes the Complaint as seeking relief.

### DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

The Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  The Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive Plaintiff of any right to which he was entitled.  The Defendants raise the defenses of Eleventh Amendment immunity, absolute immunity, qualified immunity, and additional defenses presented below.  The Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

The Plaintiff was incarcerated in the Covington County Jail on February 6, 2007, on two counts of theft of property in the third degree, two counts of possession of a forged instrument in the first degree, one count of assault in the first degree, one count of contempt of court, and two counts of violation of probation.  (Exhibit C, Inmates Records, Arrest & Booking Report.)

---

[2] Although it is unclear which constitutional right the Plaintiff claims has been violated, it appears that Plaintiff is making an Eight Amendment claim.  Although it is unclear which constitutional right the Plaintiff claims has been violated, it appears that Plaintiff is making a Fourteenth Amendment claim.

### A.    The Strip Search

The Plaintiff appears to allege an Eighth Amendment claim arising out of a strip search conducted on him as he was returning from chapel.  (Doc. 1, pp. 2-3.)  The week prior to the incidents alleged in the Plaintiff's Complaint, an inmate in the Covington County Jail was caught sneaking contraband into the jail when returning from Chapel.  (Exhibit D, Affidavit of Nathan Gardner, ("Garner Aff.,") ¶ 4; Lane Decl. ¶ 5.)  On May 22, 2007, the date of the purported incident, the Plaintiff was among a group of inmates returning from Chapel.  (Exhibit E, Affidavit of Ricky Coleman, ("Coleman Aff.,") ¶ 3; Lane Decl. ¶ 4; Gardner Aff. 3.)  Because of the earlier problems with inmates sneaking contraband into the jail from Chapel, the officers decided that five inmates returning from Chapel would be selected at random to be searched for contraband.  (Lane Decl. ¶ 6; Coleman Aff. ¶ 4; Garner Aff. ¶ 5.)  Officers Gardner and Coleman selected the inmates to be searched.  (Lane Decl. ¶ 7; Coleman Aff. ¶ 5.)  Officer Lane had no part in selecting the inmates to be strip searched.  The Plaintiff volunteered himself to be searched.  (Lane Decl. ¶ 7; Coleman Aff. ¶ 5; Gardner Aff. ¶ 6.)

The strip search policy of the Covington County Jail requires that all strip searches be performed by a member of the same sex in a designated room where only the inmate being searched and the officer conducting the search are present.  (Exhibit F, Affidavit of Preston Hughes, ("Hughes Aff.,") ¶ 5.)  During the strip search the inmate must remove his shoes, socks, and suit, but is not required to remove his underwear.  (Hughes Aff. ¶ 5.)  The searching officer then inspects the inmate's clothing to determine if any contraband is hidden inside.  (Hughes Aff. ¶ 5.)  Invasive cavity searches are not permitted, and the searching officer may not make any physical contact with the inmate during the search.  (Hughes Aff. ¶ 5.)  All five inmates were placed in Holding Cell 1 in the booking room, and were searched one by one in accordance with the jail strip search policy.  (Lane Decl. ¶ 8; Coleman Aff. ¶ 6; Gardner Aff. ¶ 7.)

When it was time to search the Plaintiff, he came out of the holding cell, and Officer Lane instructed him to remove his shoes, socks, and suit. (Lane Decl. ¶ 9.) As Officer Lane was searching the Plaintiff's Bible and clothing, the Plaintiff pulled his boxers down and began turning in a circle. (Lane Decl. ¶ 9.) When Officer Lane questioned the Plaintiff's conduct, the Plaintiff replied that he thought Officer Lane wanted to see everything, and during the search, the Plaintiff repeatedly asked Officer Lane in a loud voice if he wanted to see the Plaintiff's penis. (Lane Decl. ¶ 9; Gardner Aff. ¶ 8). Officer Lane replied that he did not want to see the Plaintiff's penis, that he only needed the Plaintiff's clothes, and he instructed the Plaintiff to put his clothes back on and join the other inmates, which he did. (Lane Aff. ¶¶ 9-10; Gardner Aff. ¶ 9.) Nothing was ever said to the Plaintiff about an "Alabama black snake," nor did the Plaintiff inform any officer at the time that Officer Lane had harassed him. (Lane Aff. ¶ 11; Coleman Aff. ¶¶ 7-8; Gardner Aff. ¶¶ 10-11.) The Plaintiff's disorderly conduct appeared to be an effort to intimidate Officer Lane. (Gardner Aff. ¶ 8.)

**B.    The Cell Search**

After the inmates were returned to their cells, Officer Lane smelled smoke coming from Cell Block D, the Plaintiff's cell block, and Officer Lane began searching cells in the block to determine the source of the smoke and whether any contraband was in the cell block. (Lane Decl. ¶¶ 12-13.) During the course of the cell searches, Officer Lane patted the Plaintiff down, but he did not touch the Plaintiff's penis, nor did he make any statements about an "Alabama black snake." (Lane Decl. ¶ 14; Exhibit G, Affidavit of Martin Caldwell, ("Caldwell Aff.,") ¶ 6.) In fact, the Plaintiff contrived the whole story as a way to bring this lawsuit and "get paid." (Caldwell Aff. ¶ 7.) The truth is that the Plaintiff had a lighter stuck to his inner thigh, and he did not want Officer Lane to find it during the pat-down search, so he "hollered like a panther" as Officer Lane was patting down his thigh, yelling, "Why you touching my dick? Why you

touching my dick?"  (Caldwell Aff. ¶ 5.)  Apparently the Plaintiff acted this way to deter Officer Lane from continuing the search and finding the lighter.  (Caldwell Aff. ¶ 5.)  The Plaintiff was successful in that regard, as Officer Lane did not finish the search and did not locate the lighter. (Caldwell Aff. ¶ 5; Lane Decl. ¶ 15.)

After this incident, the Plaintiff informed his fellow inmates that Officer Lane did not touch his penis, but that he was bringing the lawsuit to get Officer Lane and to "get paid." (Caldwell Aff. ¶ 7.)  The Plaintiff told his fellow inmates to lie to any jail staff investigating his claims about what they saw and heard to support the Plaintiff's story.  (Caldwell Aff. ¶ 8.)  In fact, the Plaintiff paid an inmate to sign his Complaint, and offered other inmates money to lie for him, telling them to "stick with him."  (Caldwell Aff. ¶ 9.)  The Plaintiff promised those inmates that if they did lie for him, he would look out for them and take care of them.  (Caldwell Aff. ¶ 9.)

## C.    The Covington County Jail Grievance Policy

It is the policy of the Covington County Jail that all inmates are permitted to submit grievances to the jail administration and that each grievance will receive a response.  (Hughes Aff. ¶ 10.)  Inmate grievance forms are made available to inmates upon request, and upon completion, they should be delivered to Preston Hughes, the Jail Administrator.  (Hughes Aff. ¶ 10.)  The Jail Administer will issue a written response to the inmate's grievance, and if the inmate is not satisfied with that response, he may appeal the grievance to the Sheriff in writing on another grievance form within 72 hours.  (Hughes Aff. ¶ 10.)  The Plaintiff filed a grievance with the Jail Administrator, but failed to file an appeal with Sheriff Meeks.  (Hughes Aff. ¶ 11; Meeks Aff. ¶ 10.)

## II.     LAW

### A.     The Plaintiff's claims are barred because he has failed to comply with the provisions mandated by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA").

The Court's adherence to mandates of the PLRA is essential to ensure that the "flood" of frivolous claims for constitutional violations does not burden and hinder the Court's consideration of legitimate claims presented by pro se litigants. See Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) ("In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ('PLRA')."). As the Supreme Court recently recognized in Jones v. Bock:

> Prisoner litigation continues to "account for an outsized share of filings" in federal district courts. Woodford v. Ngo, 548 U.S. ----, ----, n. 4, 126 S. Ct. 2378 (2006) (slip op., at 12, n. 4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. [footnote omitted] Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit. See Neitzke v. Williams, 490 U.S. 319, 327 [] (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. See Porter v. Nussle, 534 U.S. 516, 524, [] (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

127 S. Ct. at 914 (emphasis added). Uniform adherence to all the provisions of the PLRA, especially the grievance exhaustion requirement, is mandatory for inmate litigants and the Courts to ensure that the federal judicial system can effectively "separate the wheat from the chaff" with regard to claims asserted by inmate litigants.

## 1.    The Plaintiff has failed to exhaust all administrative remedies.

The first section of the PLRA provides:

> <u>No action shall be brought</u> with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>.

42 U.S.C. § 1997e(a) (emphasis added).  Under this provision of the PLRA, an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983, and the Court is precluded from granting relief to any plaintiff who has not exhausted <u>all</u> his administrative remedies.  In <u>Woodford v. Ngo</u>, ___ U.S. ___; 126 S. Ct. 2378, 2382 (2006), the Supreme Court held, "Exhaustion is no longer left to the discretion of the district court, but is <u>mandatory</u>."  <u>See also</u> <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards.").  However, as the Supreme Court recognized in <u>Jones v. Bock</u>, each prison sets its own parameters for what constitutes compliance with its grievance policy:

> In <u>Woodford</u>, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ___, 126 S. Ct. 2378 [] -- rules that are defined not by the PLRA, but by the prison grievance process itself. ….  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

127 S. Ct. at 922-23.

Here, the Plaintiff filed only one grievance relating to the allegations he makes in his Complaint, but he never filed an appeal with the Sheriff.  The Plaintiff has not complied with the provisions of the Covington County Jail grievance policy, because he has failed to file an appeal with the sheriff, as is required by the Covington County Jail grievance policy.  Therefore, he cannot be deemed to have exhausted all available administrative remedies provided by the

Covington County Jail grievance policy, as is required by § 1997e(a) of the PLRA.  Therefore, his claims must be dismissed.

> **2      Plaintiff's claims are barred by the PLRA because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."  Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002); see also Boxer v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006) ("We conclude that a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury. Accordingly, we affirm the dismissal of Boxer's claim under the Eighth Amendment").  Because Plaintiff has not made a showing of physical injury at all, much less a showing of a physical injury that is greater than *de minimis*, his Complaint is due to be dismissed.

> **B.      All claims against these Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

The Plaintiff's claims against these Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled

to Eleventh Amendment immunity); <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a <u>person</u>, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). Any claims against the Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted. <u>Id.</u>; <u>Carr</u>, 916 F.2d at 1525 n.3.

> **C.    All claims against Officer Lane in his official capacity must be dismissed because he is no longer an employee of the Covington County Jail.**

Because Officer Jeremy Lane is no longer an employee of the Covington County Jail, all claims against him in his official capacity must be dismissed. <u>See</u> <u>Paige v. Hines</u>, ___ F. Supp. 2d ___, 2006 WL 2252703, *4 n.15 (N.D. Ill. 2006) ("As to those defendants no longer employed by IDOC, the official capacity claims would have no meaning or would be against a defendant's current principal, an entity having no relation to this case). <u>Cf.</u> <u>Kmetz v. State Historical Society of Wisconsin</u>, 300 F. Supp. 2d 780, 785-86 (W.D. Wis. 2003) (suit against former government official in his "former official capacity" is inconsistent with the nature of an official capacity claim and has no meaning)."); <u>Roniger v. McCall</u>, 22 F. Supp. 2d 156, 161 (S.D.N.Y. 1998) ("As an initial matter, it should be noted that because Scanlon ceased to be employed by the Comptroller's Office in 1997 and no longer has any "official capacity," McCall is for all practical purposes the only defendant affected by the "official capacity" claim. Accordingly, the claim against Scanlon in her official capacity cannot lie.").

**D.    Alternatively, these Defendants are entitled to be dismissed based on absolute and qualified immunity.**

The Plaintiff's claims are barred on two additional immunity grounds. First, these Defendants are absolutely immune to the Plaintiff's state law claim under Article I, § 14 of the Alabama Constitution of 1901 in both their official and individual capacities. Second, in their individual capacities, these Defendants are entitled to qualified immunity to Plaintiff's federal claims.

**1.    These Defendants are entitled to absolute immunity from any state law claims the Plaintiff may have asserted in his Complaint.**

These Defendants are absolutely immune to Plaintiff's claims for money damages under Article I, § 14 of the Alabama Constitution of 1901. Article I, § 14 of the Alabama Constitution of 1901 provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." This section grants the State and its agencies "absolute" immunity from suit in any court. Ex parte Mobile County Dep't of Human Res., 815 So. 2d 527, 530 (Ala. 2001). Section 14 immunity bars "almost every conceivable type of suit." Hutchinson v. Bd. of Trustees of Univ. of Ala., 256 So. 2d 281, 283 (Ala. 1971). Section 14 immunity is "nearly impregnable." Patterson v. Gladwin Corp., 835 So. 2d 137, 142 (Ala. 2002).

By virtue of his position, Sheriff Meeks is an executive branch constitutional officer of the State of Alabama. See Article V, § 112 of the Alabama Constitution of 1901; see also McMillian v. Monroe County, 520 U.S. 781, 793 (1997) (holding that an Alabama sheriff acts for the state and not his county when carrying out law enforcement duties); Carr v. City of Florence, 916 F.2d 1521, 1525-26 (11th Cir. 1990). Therefore, a suit against him in his official capacity is a suit against the State of Alabama. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Similarly, because Administrator Hughes and Officer

10

Lane act for the Sheriff as jail officials, they also are state officials for purposes of absolute immunity.  Lancaster, 116 F.3d at 1431.

As executive branch, constitutional officers of the State, these Defendants are immune from suit under Article I, § 14 of the Alabama Constitution of 1901.  This section immunizes them from **all** state law claims, including constitutional claims, even though they are sued in their individual capacities.  Tinney v. Shores, 77 F.3d 378, 383 (11th Cir. 1986) (holding sheriff and deputy sheriff were entitled to state sovereign immunity); Lancaster, 116 F.3d at 1431 (holding sheriff and jailers were entitled to sovereign immunity); Parker v. Amerson, 519 So. 2d 442, 445 (1987) (holding the Sheriff immune from suit although sued "individually, and as Sheriff"); Ex parte Purvis, 689 So. 2d 794, 796 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities); Ex parte Haralson, 871 So. 2d 802, 807 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity).

There are, however, limited exceptions to this immunity.  An Alabama sheriff is immune from suit:

> except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

Parker, 519 So. 2d at 443.  Accordingly, even in situations where sheriffs and their employees are sued for negligence or bad faith, the only exceptions to sovereign immunity allowed by the Alabama Supreme Court under Art. 1, § 14 of the Alabama Constitution of 1901, are to *enjoin* their conduct.  Alexander v. Hatfield, 652 So. 2d 1142, 1143 (Ala. 1994).  With only these narrow exceptions, Alabama sheriffs and their deputies are immune from suit.  Ex parte Purvis, 689 So. 2d at 796; Ex parte Blankenship, 893 So.2d 303, 305 (Ala. 2004).

Slightly over a year ago, the Alabama Supreme Court again affirmed that sheriffs and deputies enjoy absolute immunity to state law money damages claims. Ex parte Davis, 930 So. 2d 497, 501 (Ala. 2005). In Davis, the Conecuh County Circuit Court refused to grant a Conecuh County deputy's motion to dismiss state law money damages claims. 930 So. 2d at 499. Plaintiff's claims against the deputy included false imprisonment, assault and battery, outrage, wantonness, negligence, trespass, and conversion. Id. Granting the deputy's petition for a writ of mandamus and instructing the circuit court to grant the motion to dismiss, the Alabama Supreme Court held that "an action against a sheriff – or a deputy sheriff – for damages arising out of the performance of his duties is essentially a suit against the state" and thereby barred under Article I, § 14 of the Alabama Constitution of 1901. Id. at 501 (internal quotations and citations omitted).

Here, the Plaintiff has alleged that at all times relevant he was an inmate in the Covington County Jail. He has alleged that the actions taken by Sheriff Meeks, Administrator Hughes, and Officer Lane were taken in their capacities as Sheriff, Jail Administrator, and Corrections Officer. It is only in those capacities that any of these men had any authority or reason to supervise the Plaintiff or control his movements in any way. It was only in their respective capacities that these men had any authority to search the Plaintiff's person or cell. To the extent that the Complaint is construed to request money damages, these Defendants are being sued for actions taken in the line and scope of their duties. Those claims are barred by Article I, § 14 of the Alabama Constitution of 1901.

> **2.    These Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

These Defendants were acting within their discretionary authority as the Sheriff of Covington County, the Jail Administrator of the Covington County Jail, and a corrections officer

of the Covington County Jail during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004).  All actions alleged in the Plaintiff's Complaint are governed by jail policy and are necessarily law enforcement activities.  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the Plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).

### a. None of these Defendants have violated Plaintiff's federally protected rights.

### i. The Strip Search

The Unites States Supreme Court has held that strip searches of the type conducted this case are not unreasonable.  Bell v. Wolfish, 441 U.S. 520, 558 (1979).  In determining the reasonableness of a search, the courts must consider, *inter alia*, the manner and place in which it is conducted.  Id. at 559.  In this case, the Plaintiff was searched in a booking room specifically used for strip searches.  See, Justice v. Peachtree City, 961 F.2d 188, 193 (11th Cir. 1992) (approving a private room).  There are no allegations that the Defendants used physical force on the Plaintiff, that any sort of bodily intrusion or penetration was employed.  Even if the Plaintiff had made such allegations, such a use of force would have violated the Covington County Jail strip search policy.  Although the Plaintiff alleges that he was subjected to abusive language, the evidence reveals that if there was any abusive language during the strip search, it was used by the Plaintiff against Officer Lane.  The Eleventh Circuit has declined to hold that abusive language is sufficient to transform an otherwise properly conducted search into an unlawful one.  See, e.g.,

Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) ("We do not imply that words alone can make the manner of an otherwise properly conducted search unconstitutional under the Fourth Amendment").

While law enforcement officials may not strip search every detainee or inmate which comes into the jail, they may perform a strip search when there is a reasonable suspicion that provides a basis for the strip search. See Skurstenis v. Jones, 236 F.3d 678, 682 (11th Cir. 2000). It is not clear that jailers are subject to the same standard of reasonable suspicion as other law enforcement officers. The Eleventh Circuit recognized in Skurstenis that jails are "fraught with serious security dangers," and that "deference that should be afforded in matters of institutional security." Id. (citing Bell v. Wolfish, 441 U.S. 520 (1979)). In Evans, the Eleventh Circuit observed:

> Most of us are uncertain that jailers are required to have a reasonable suspicion of weapons or contraband before strip searching-for security and safety purposes-arrestees bound for the general jail population. For background, see Cuesta v. Sch. Bd. of Miami-Dade County, 285 F.3d 962, 969 n.6 (11th Cir. 2002) (strip search policy at jail); Wilson v. Jones, 251 F.3d 1340, 1343 (11th Cir. 2001) (same); Skurstenis v. Jones, 236 F.3d 678, 682 (11th Cir. 2000) (same) (solitary confinement). Never has the Supreme Court imposed such a requirement. See Bell v. Wolfish, 441 U.S. 520, 559-60[] (1979) (rejecting claim that strip search policy at a federal jail for mostly pretrial detainees violated the Fourth Amendment per se); United States v. Edwards, 415 U.S. 800, 808 n. 9[] (1974) (reserving whether "custodial searches incident to incarceration" might violate the Constitution in either "number or ... manner of perpetration").

407 F.3d at 1278-79. However, assuming, *arguendo*, that jailers are subject to the reasonable suspicion standard, the instant search was lawful. Here, the officers who conducted the strip search did so according to their suspicion that inmates were sneaking contraband into the jail from Chapel, a suspicion based on prior incidents. Furthermore, they evidence reveals that the **Plaintiff volunteered for the strip search**. Surely, an inmate who willfully and knowingly offers to be strip-searched is in no position to claim that he was wrongfully searched. It is clear that

because the officers had a reasonable suspicion as a basis for the search and the search was done reasonably, the strip search of the Plaintiff did not violate any constitutional right.

### ii.    The Cell Search

The Plaintiff contends that Officer Lane's pat-down during the cell search was unconstitutional because, he contends, Officer Lane touched the Plaintiff's penis. To the extent that this claim states a constitutional violation, it is based on the protections of the Eighth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989). Aside from the fact that the Plaintiff has impeached the truthfulness of the very claims he alleges in his Complaint, those claims, even if they had any basis in fact, have no basis in law.

The Eighth Amendment ensures that inmates are entitled to "contemporary standards of decency," Estelle v. Gamble, 429 U.S. 97, 103 (1976). The Supreme Court has addressed those minimal standards of providing humane conditions of confinement, Helling v. McKinney, 509 U.S. 25, 32 (1993), and prison officials' duties to assure the safety of inmates. Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). Even under these parameters, an Eighth Amendment violation is stated only when the alleged deprivation is "objectively, 'sufficiently serious,'" and the prison official acts with "'deliberate indifference' to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). In Farmer the Court resolved the meaning of the deliberate indifference standard. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

Here, the Plaintiff has not alleged that he suffered any harm as a result of the pat-down search conducted by Officer Lane, nor has he alleged that being subjected to such pat-down searches subjects him to a substantial risk of serious harm. Accordingly, he has established no

violation of his Eighth Amendment rights. The evidence reveals that Officer Lane did not touch the Plaintiff's penis during the pat-down search. Rather, the Plaintiff created such allegations to prevent Officer Lane from discovering contraband the Plaintiff had hidden on his person, and the Plaintiff later sought to profit from those false allegations by bringing this lawsuit. Because Officer Lane conducted the cell search in accordance with jail policy and pursuant to a reasonable suspicion of the existence of contraband, even if Officer Lane made contact with the Plaintiff's penis during the pat-down, such contact would only have been incidental to a reasonable search for contraband, conducted pursuant to a legitimate, penological purpose.

> **b.    Neither the case law of the Eleventh Circuit or the United States Supreme Court, nor that of the Alabama Supreme Court, placed these Defendants on notice that their conduct would violate Plaintiff's "clearly established" federal rights.**

Even had the Plaintiff successfully stated a constitutional violation, he still bears the burden of showing that the state of the law provided these Defendants with "fair warning" that their conduct would violate the Plaintiff's "clearly established" federal rights. Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003). In determining whether the conduct of the Defendants was clearly established as violating the Plaintiff's constitutional rights, the reviewing court must examine the state of the law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Storck v. City of Coral Springs, 354 F.3d 1307, 1318 (11th Cir. 2003), 354 F.3d at 1318 (quoting 28 F.3d at 1149). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is

clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1992)).

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose," here, the Alabama Supreme Court. Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

### i.    The Strip Search

As discussed above, the strip search for which the Plaintiff volunteered was reasonable. The officers had a reasonable suspicion as a basis for the search and the search was done in a private room. The evidence further reveals that the Officer Lane did not harass the Plaintiff; rather, the Plaintiff harassed Officer Lane. However, to the extent this Court determines that the Plaintiff has alleged facts sufficient to state a claim for verbal harassment and an unlawful search, no case from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Alabama Supreme Court has held that verbal harassment can render an otherwise constitutional search unconstitutional. To the Contrary, the Eleventh Circuit has observed that abusive language is not alone sufficient to transform an otherwise properly conducted search into an unlawful one. Evans, 407 F.3d at 1282. Further, no caselaw from these courts would have put these Defendants on notice that the strip search for which the Plaintiff volunteered was unconstitutional. Therefore, Sheriff Meeks, Administrator Hughes, and Officer Lane cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw.

### ii.    The Cell Search

As further discussed above, the cell search conducted on the Plaintiff was reasonable, and the Plaintiff suffered no harm as a result of the pat-down. Officer Lane had a reasonable suspicion as basis for the search, and both the cell search and the pat-down were conducted according to jail policy. The evidence further reveals that Officer Lane did not touch the Plaintiff's penis; rather, the Plaintiff alleges that conduct in his Complaint, the veracity of which he later refutes, only to bring a lawsuit and "get paid." However, even if Officer Lane touched the Plaintiff's penis, it would have been incidental to a reasonable search for contraband. To the extent this Court determines that the Plaintiff has alleged facts sufficient to state a claim for sexual harassment, no case from the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court has held unconstitutional the incidental contact with an inmate's genitals during the course of a reasonable pat-down for contraband during a cell search conducted pursuant to a legitimate penological purpose. No caselaw from these courts would have put these Defendants on notice that the pat-down search that Officer Lane conducted on the Plaintiff was unconstitutional. Therefore, Sheriff Meeks, Administrator Hughes, and Officer Lane cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw.

### c.    The text of the constitutional provisions that Plaintiff alleges were violated do not on their face prohibit the Defendants' conduct.

The Eleventh Circuit has recognized an alternate method for establishing that the Defendants had notice that their conduct was unlawful. Accordingly, even where the Plaintiff cannot demonstrate that the caselaw provides these Defendants notice that their conduct violates his constitutional rights, as is the case here, he can establish that these Defendants still had "fair warning" of the constitutional deficiencies of their conduct from the text of the constitutional provision in question. In such a case, Plaintiff must either demonstrate that the pertinent federal

18

statute or federal constitutional provision is specific enough on its face to prohibit the Defendants' conduct as unconstitutional, even in the total absence of caselaw.  Storck, 354 F.3d at 1317.  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  To establish this case as an "obvious clarity" case, Plaintiff must show that "the words of the pertinent federal statute or federal constitutional provision" establishing the federal right allegedly violated are "specific enough to establish clearly the law applicable to particular conduct" such that "case law is not needed to establish that the conduct cannot be lawful."  Vinyard, 311 F.3d at 1350.

Neither the text of the Eighth Amendment, nor the text of the Fourteenth Amendment on its face, prohibits the conduct of the Defendants in this case as unconstitutional.  Even if Plaintiff had alleged conduct that violated his constitutional rights, neither the relevant bodies of caselaw nor the text of the relevant constitutional provisions would have put these Defendants on notice that their conduct would have violated the Plaintiff's constitutional rights.

### E.    The Plaintiff has failed to allege personal involvement as required by 42 U.S.C. § 1983.

In order to establish a constitutional violation for conduct under § 1983, the Plaintiff must allege personal involvement on behalf of these Defendants.  The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the Defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the Defendants, a policy established by the Defendants resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Meeks or Administrator Hughes were in any way personally involved in the allegations surrounding the Plaintiff's deliberate indifference claims.

The Plaintiff has offered no allegation demonstrating that these named Defendants were in any way involved in the conduct that the Plaintiff alleges is unconstitutional. There are absolutely no facts in the record to show that these Defendants personally participated in the circumstances surrounding the Plaintiff's claims, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights.

The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, Plaintiff's allegations are insufficient to create liability on the part of the Defendants. As such, all the Plaintiff's claims against Sheriff Meeks and Administrator Hughes are due to be dismissed.

**F.    There is no *respondeat superior* liability under 42 U.S.C. § 1983.**

Because the Plaintiff's Amended Complaint contains no allegations demonstrating that Sheriff Meeks or Administrator Hughes were in any way involved in the actions he claims were constitutionally infirm, the Plaintiff's § 1983 claim is based upon nothing more than *respondeat superior* and fails to state a claim for which relief may be granted against these Defendants.

Neither the express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, **subjects, or causes to be subjected**, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.)  The language of the statute requires that there be a direct causal link between Plaintiff and the actions of a putative defendant.  Merely employing an individual who causes harm is insufficient to invoke the remedy of this statute.

The United States Supreme Court addressed this exact issue and adopted this holding nearly 30 years ago.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).  In Monell, the Court cited § 1983 and held, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  436 U.S. at 691.  Accordingly, as both the explicit text of § 1983 and the opinions of the United States Supreme Court forbid vicarious liability, the Plaintiff's *respondeat superior* claims must fail.

### G.    The Plaintiff lacks standing to obtain an equitable remedy.

The Plaintiff lacks standing to pursue his equitable claims.  A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or is about to sustain, some direct injury.  Golden v. Zwickler, 394 U.S. 103, 109-110 (1969).  Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the plaintiff alleged that he had been subjected to a

chokehold by arresting officers in violation of his federally protected rights. 461 U.S. 95, 97 (1983). The plaintiff sought an injunction barring the future use of police chokeholds. <u>Lyons</u>, 461 U.S. at 98. After the Ninth Circuit affirmed the district court's grant of a preliminary injunction, the United States Supreme Court reversed, holding that the plaintiff lacked standing. <u>Id.</u>, at 99-100. The Court stated that the plaintiff's standing rested solely on pure speculation that he *might* be stopped by the police, *might* be arrested, and *might* be subjected to another chokehold. <u>Id.</u>, at 108. The court noted that five months elapsed between the choking incident and the filing of the complaint and the plaintiff was not subjected to another chokehold. <u>Id.</u>

The Plaintiff's claims for injunctive relief, here, are more speculative as those in <u>Lyons</u>. The Plaintiff's claim for injunctive relief is premised on the following hypothetical scenario: the Plaintiff *might* escape or be released from the Covington County Jail; the Plaintiff *might* travel to Conecuh County, where he *might* be arrested or otherwise become incarcerated in the Conecuh County Jail; a corrections officer *might* decide to conduct a strip search of inmates in the Conecuh County Jail; the Plaintiff *might* be one of the inmates selected to be strip-searched; Jeremy Lane *might* be the officer that strip searches the Plaintiff; and, Jeremy Lane *might* perform the strip search in an unconstitutional manner. Such speculation into future conduct – even if it does violate the Plaintiff's rights – does not afford the Plaintiff standing to bring this action. <u>Lyons</u>, 461 U.S. at 108.

**H.    The Plaintiff is not entitled to punitive damages**

"[P]unitive damages in an action under § 1983 [are only available] when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56 (U.S. 1983). <u>See also</u> <u>Ferrill v. Parker Group, Inc.</u>, 168 F.3d 468 (11th Cir. 1999):

> 'Punitive damages are disfavored by the law and are awarded solely to punish defendants and deter future wrongdoing.' To support a punitive damages award,

a plaintiff must show that the defendant acted with malice or reckless indifference to the plaintiff's federally protected rights. Malice means 'an intent to harm' and recklessness means 'serious disregard for the consequences of [one's] actions.'

Ferrill, 168 F.3d at 468 (internal citations omitted).

The Plaintiff has not sufficiently alleged facts showing "evil motive or intent" or "reckless or callous indifference to the federally protected rights of others" on the part of Defendants. Therefore, punitive damages are not proper against these Defendants, and all claims for punitive damages are due to be dismissed.

## CONCLUSION

These Defendants deny each and every allegation made by Plaintiff, Marshall E. Brandon, in his Complaint. These Defendants have not acted in a manner so as to deprive the Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

The Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 15th day of August, 2007.

**s/Joseph L. Hubbard, Jr.**
SCOTT GOSNELL, Bar Number: GOS002
JOSEPH L. HUBBARD, JR., Bar Number HUB015
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama 36124
Telephone: (334) 262-1850
Fax: (334) 262-1889
E-mail: jhubbard@webbeley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 15th day of August, 2007, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Brandon Marshall
Covington County Jail
290 Hillcrest Drive
Andalusia, Alabama  36420


**s/Joseph L. Hubbard, Jr.**
OF COUNSEL

# Exhibit A
# Affidavit of Dennis Meeks

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **MARSHALL E. BRANDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:07-cv-466-MHT-SRW** |
| | ) | |
| **DENNIS MEEKS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF DENNIS MEEKS

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF COVINGTON** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Dennis Meeks, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Dennis Meeks. I am over the age of nineteen and competent to make this affidavit.

2.    I the Sheriff of Covington County. I have served in this position for over five months. Prior to becoming the Sheriff of Covington County, I was the Chief Deputy of the Covington County Sheriff's Department for a year. Prior to that, I served as the Chief Investigator for the Covington County Sheriff's Department for two years. Prior to that, I served as an investigator for the Covington County Sheriff's Department for three years. Prior to that, I served as a patrol officer and deputy for the Covington County Sheriff's Department for two years. Prior to that, I served as a corrections officer and dispatch officer at the Covington County Jail for a year. I have almost fourteen years experience in law enforcement.

1

3.    I am familiar with Marshall Brandon as he has frequently been incarcerated in the Covington County Jail. Most recently, Mr. Brandon was incarcerated in the Covington County Jail on February 6, 2007, for theft in the third degree, possession of a forged instrument in the second degree, and violation of probation.

4.    I am aware that in his Complaint, Mr. Brandon alleges that he alleges that he was improperly strip-searched by a corrections officer in the Covington County Jail.

5.    It is the policy of the Covington County Jail that all strip searches be performed by a member of the same sex in a designated room where only the inmates being searched and the officer conducting the search are present. During the strip search the inmate must remove his shoes, socks, and suit, but is not required to remove his underwear. The searching officer then inspects the inmate's clothing to determine if any contraband is hidden inside. Invasive cavity searches are not permitted, and the searching officer may not make any physical contact with the inmate during the search.

6.    I am aware that in his Complaint, Mr. Brandon alleges that he alleges that he was sexually harassed during a cell search by a corrections officer in the Covington County Jail.

7.    It is the policy of the Covington County Jail that during a cell search, the inmate occupant will be treated courteously and respectfully by the searching officer. All bedding and inmate property will be searched and any contraband will be removed from the cell. Any items strung across the cell will be removed, because it is against jail policy for an inmate to hang any item in the cell that detracts from visibility into the cell.

8.    It is the policy of the Covington County Jail that no employee of the jail shall participate in sexual harassment of any co-employee or inmate. Sexual harassment includes any sexual comments, jokes, or conversations that make either party feel uncomfortable, or any physical contact that is sexual in nature and makes either party feel uncomfortable. Any

2

complaint of sexual harassment will be investigated by the Jail Administrator, and any perpetrator of sexual harassment will be subject to employee discipline, including suspension or termination.

9.    It is the policy of the Covington County Jail that all inmates are permitted to submit grievances to the jail administration and that each grievance will receive a response. Inmate grievance forms are made available to inmates upon request, and upon completion, they should be delivered to the Jail Administrator. The Jail Administer will issue a written response to the inmate's grievance, and if the inmate is not satisfied with that response, he may appeal the grievance to the Sheriff in writing on another grievance form within 72 hours.

10.    I never received any grievance or appeal of any kind from Mr. Brandon. The first time I learned of his allegations was when I received a copy of his Complaint in the mail.

11.    After I learned of Mr. Brandon's allegations, I ordered Sergeant Teddie Rae Motley, the chief investigator of the Covington County Sheriff's Department, to investigate Mr. Brandon's allegations and prepare a report with findings and recommendations.

12.    After his investigation, Sergeant Motley reported finding none of Mr. Brandon's allegations true, and did not recommend that I take any action on this matter.

13.    Jeremy Lane resigned from his position at the Covington County Jail for personal reasons on 7/17/07. To my knowledge, he is now employed by the Conecuh County Jail as a corrections officer.

14.    Attached to the Defendants' Special Report are true and correct copies of the Plaintiff's inmate and medical records. These records are prepared and kept in the regular course of business of the Covington County Jail.

3

15.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the ___26___ day of July, 2007.


_Dennis Meeks_
Dennis Meeks


**SWORN TO** and **SUBSCRIBED** before me this _26_ day of July, 2007.


_Patricia Sweatt_
NOTARY PUBLIC

My Commission Expires:___1-29-09___

# Exhibit B
# Declaration of Jeremy Lane

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **MARSHALL E. BRANDON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 2:07-cv-466-MHT-SRW** |
| | ) |
| **DENNIS MEEKS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**DECLARATION OF JEREMY LANE**
**PURSUANT TO 28 U.S.C. § 1746**

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF CONECUH** | ) |

1.      My name is Jeremy Lane. I am over the age of nineteen and competent to make this declaration.

2.      I am a Corrections Officer at the Conecuh County Jail. At the time of the events alleged in the Complaint, I was a Corrections Officer at the Covington County Jail. I served in that position for four months. Prior to becoming a Corrections Officer in the Covington County Jail, I served in the National Guard and I served in the Volunteer Fire Departments of Castleberry, Alabama, and Brooklyn, Alabama.

3.      I read Marshall Brandon's complaints in this matter and have personal knowledge of the facts underlying Mr. Brandon's claims.

4.      On May 22, 2007, a group of inmates were returning from Chapel, where a minister from outside the jail provides services for the inmates at least once a week. Mr. Brandon had attended Chapel that day.

5.    One week earlier, an inmate was caught sneaking contraband into the jail when returning from Chapel. That inmate had hidden the contraband in his Bible.

6.    Because of the earlier problems with contraband coming from Chapel, Officers, Nathan Gardner and Ricky Coleman and I, decided to strip search five of the inmates returning from Chapel.

7.    Officers Gardner and Coleman selected the inmates to be searched. Mr. Brandon volunteered himself to be searched.

8.    All five inmates were placed in holding cell 1 in the booking room, and were searched one by one. The searches were performed in accordance with the jail strip search policy.

9.    When it was time to search Mr. Brandon, he came out of the holding cell, and I instructed him to remove his shoes, socks, and suit. I began to search his Bible and clothing, and when I looked up, he had his boxers down around his ankles and was turning in a circle. I asked him, "What are you doing?" He replied that he thought I wanted to see everything. I told him that all I needed to see was his clothes. During the search, Mr. Brandon kept asking me in a loud voice if I wanted to see his penis.

10.    I told Mr. Brandon to put his clothes back on and join the other inmates, which he did.

11.    I did not say anything to Mr. Brandon during the search about his penis, nor did I say anything to him about an "Alabama black snake."

12.    Some time after the inmates were returned to their cells, I smelled smoke coming from Cell Block D. I went to Cell Block D, and began looking in cells to determine the source of the smoke and whether any contraband was in the cell block.

2

13.    I began searching cells in order to determine where the smoke was coming from, and whether any contraband was in the cell bock.

14.    As a Corrections Officer in the Covington County Jail, I performed numerous pat-downs during the usual course of my employment.  Over a period of four months, I performed over several thousand pat-down searches.  I don't remember the details of all the pat-down searches I performed while at the Covington County Jail.

15.    I don't specifically remember the details of any pat-down search of performed on Marshal Brandon on May 22, 2007.  However, I am certain that I did not intentionally touch his penis, and that I did not make any statement to him about his penis or an "Alabama black snake."

16.    I never did determine the source of the smoke in Cell Block D, despite the pat-down searches of inmates and the cell searches I performed.

17.    Any pat-down searches or cell searches I performed on May 22, 2007, would have been performed according to Covington County Jail policy.

18.    On July 17, 2007, I submitted my resignation at the Covington County Jail, so I could take a job as a corrections officer at the Conecuh County Jail.  I moved from Andalusia, Alabama to Castleberry, Alabama, to be closer to my grandmother, whom I take care of.

19.    I declare under penalty of perjury that the foregoing is true and correct.  I further declare that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge and information regarding this case, as well as my professional training, education, and experience.

3

Executed on this the ___3/___ day of July, 2007.

Jeremy Lane

4

# Exhibit C
# Inmate Records of Marshall Brandon
# Arrest & Booking Report

# COVINGTON COUNTY
## SHERIFF DENNIS MEEKS

290 HILLCREST DR
ANDALUSIA, AL 36420

# Arrest & Booking Report

| | |
|---|---|
| Arrest # | **07-00124** |
| Booking # | |
| Arrest Type | **Warrant** |

| Arrest Date / Time **02/06/2007 00:00:00** | Officer ID **110** | Agency **CCSO - COVINGTON COUNTY** | Other # | Incident # **07-00124** | Seq # **1** |
|---|---|---|---|---|---|

| Location | | | Beat | Sector | District |
|---|---|---|---|---|---|

| X-Street | Program | Offense Class | Offender Role | Disposition of Juvenile **0** | Multiple Clearance **N** |
|---|---|---|---|---|---|

## ARRESTEE INFORMATION



| | |
|---|---|
| Name **BRANDON, MARSHALL** | |
| Address **ROSEWOOD APT. HWY29 N** | |

| City/State/Zip **ANDALUSIA, AL  36420** | Home Phone **H** | Work Phone **W** |
|---|---|---|

| DL # | DL State | ID Only ☐ | SSN **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** | Jail # |
|---|---|---|---|---|

| Local # | State # | FBI # |
|---|---|---|

| D.O.B. **07/21/1965** | Age **41** | Sex **M** | Citizenship (NCIC Codes) **US - USA** | Race **B - Black** | Ethnicity **N - Not of Hispanic** |
|---|---|---|---|---|---|

| Scars, Marks, Tattoos | Height **5'10"** | Weight **190** | Hair **BLK** | Eyes **BRO** | Place of Birth | Resident Status |
|---|---|---|---|---|---|---|

| Occupation | Employer |
|---|---|

| Employer Address | Employer Phone |
|---|---|

## VEHICLE INFORMATION

| Vehicle License | State | Year | Make | Model | Style | Body Type | Color | Color |
|---|---|---|---|---|---|---|---|---|

| VIN | Vehicle Disposition **Other** | Towed To / Stored At |
|---|---|---|

Comments

## CHARGES

Arrestee Armed With

| Seq # | Charge Type Action Type Law Enf Dispo | Count | Violation UCR Code & Desc | Charge Date | Citation # Warrant # | Court Bail Amt | Charge Dispo Dispo Date |
|---|---|---|---|---|---|---|---|
| 2 | Misdemeanor Warrant | 2 | **13A-8-5 - THEFT OF PROPERTY 3RD/CONFIDENCE GAME** 9999 - Non-UCR Reportable Incident | | DC | $3000.00 | |
| 3 | Felony Warrant | 2 | **13A-9-5 - POSSESS. FORGED INSTRUMENT 1ST/PASSING COUNTERFIT OBJECT** 9999 - Non-UCR Reportable Incident | | GJ 2007 200110 | $26000.00 | |

Global Records® Law Enforcement Records Management System
Licensed to: Covington County Sheriff

Print Date **06/30/2007**

# COVINGTON COUNTY D.C.
## SHERIFF DENNIS MEEKS
290 HILLCREST DR
ANDALUSIA, AL 36420

# Arrest & Booking Report

| | |
|---|---|
| Arrest # | **07-00124** |
| Booking # | |
| Arrest Type | **Warrant** |

| Arrest Date / Time | Officer ID | Agency | | Other # | Incident # | Seq # |
|---|---|---|---|---|---|---|
| **02/06/2007 00:00:00** | **110** | **CCSO  - COVINGTON COUNTY** | | | **07-00124** | **1** |

| Location | | Beat | Sector | District |
|---|---|---|---|---|
| | | | | |

| X-Street | Program | Offense Class | Offender Role | Disposition of Juvenile | Multiple Clearance |
|---|---|---|---|---|---|
| | | | | **0** | **N** |

## CHARGES - cont.

| 4 | Felony | 1 | 13A-6-21 - ASSAULT 2ND/AGGRAV CHILD ABUSE-NON-FAMILY | WR2007300113. | 06/21/2007 |
|---|---|---|---|---|---|
| | Warrant | | | 00 | |
| | Released | | 9999 - Non-UCR Reportable Incident | | |

| 5 | Misdemeanor | 1 | 32-1-4 - FAILING TO APPEAR (TRAFFIC)/CONTEMPT OF COURT-FAILING TO APPEAR | | |
|---|---|---|---|---|---|
| | Taken into Custody | | | | |
| | | | 9999 - Non-UCR Reportable Incident | | |

| 6 | Felony | 1 | 15-22-54 - PROBATION VIOLATION/PROBATION VIOLATION | CC2002202.70 | $20000.00 |
|---|---|---|---|---|---|
| | Taken into Custody | | | | |
| | | | 9999 - Non-UCR Reportable Incident | | |

| 7 | Felony | 1 | 15-22-54 - PROBATION VIOLATION/PROBATION VIOLATION | CC1998257.71 | |
|---|---|---|---|---|---|
| | Taken into Custody | | | | |
| | | | 9999 - Non-UCR Reportable Incident | | |

## AFFIDAVIT

mike bowlen the arresting officer
R/O ON WR-2007-300113  ON 6-21-07
forgery changed to GJI on 6-20-2007

## CUSTODY INFORMATION

| Transport Date / Time | Officer ID | Agency | | Escape Risk | Suicidal | Violent | Protective Custody |
|---|---|---|---|---|---|---|---|
| | | **CCSO  - COVINGTON COUNTY** | | ☐ | ☐ | ☐ | ☐ |

| Booking Date / Time | Officer ID | Agency | | Held for Extradition | Extradited To | | Jail ID |
|---|---|---|---|---|---|---|---|
| **05/28/2007 00:00:00** | **CJ5** | **CCSO  - COVINGTON COUNTY** | | ☐ | | | |

| Juvenile | Emergency Contact / Parent | Relation | Phone | Notified | Time Notified | School | Notified | Time Notified |
|---|---|---|---|---|---|---|---|---|
| ☐ | | | | ☐ | | | ☐ | |

| On Probation | Probation Officer | Notified | Time Notified | Juv Disposition | Hours Held |
|---|---|---|---|---|---|
| ☐ | | ☐ | | **0 - 0** | **0** |

| Release Comments | | Reason | Court Date / Time |
|---|---|---|---|
| | | | |

| Released Date / Time | Released By | Juvenile Released To | Signature |
|---|---|---|---|
| | | | |

# COVINGTON COUNTY D.C.
## SHERIFF DENNIS MEEKS

290 HILLCREST DR
ANDALUSIA, AL 36420

**Custody Details & History Log**

Arrest # **07-00124**

Booking #

## SUBJECT INFORMATION

| Name **BRANDON, MARSHALL** | DOB **07/21/1965** | Local ID # |
|---|---|---|
| SSN **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** | Jail ID | State # |

| Sex **M** | Race **B** | Height **5'10"** | Weight **190** | Hair **BLK** | Eyes **BRO** | FBI # |
|---|---|---|---|---|---|---|

## CUSTODY LOG / HISTORY

| Date & Time | Log Entry Type | Reason | Pod / Blk | Cell | Officer | Agency |
|---|---|---|---|---|---|---|
| 05/28/2007 00:00:00 | BOOK-IN | ARR | D | | CJ5 | CCSO |

# COVINGTON COUNTY D.C.
## SHERIFF DENNIS MEEKS

290 HILLCREST DR
ANDALUSIA, AL 36420

**Arrest & Booking**
**Medical Page**

Arrest # **07-00124**

Booking #

| Date 02/06/2007 00:00:00 | Day **Tuesday** | Incident # **07-00124** | Other # |
|---|---|---|---|

## SUBJECT INFORMATION

| Name **BRANDON, MARSHALL** | | DOB **07/21/1965** | Age **41** | Place of Birth |
|---|---|---|---|---|

| Address **ANDALUSIA AL 36420** | Apt | Phone **H: H** **W: W** |
|---|---|---|

| DL # | SSN **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** | Jail # | Local # | State # | FBI # |
|---|---|---|---|---|---|

| Sex **M** | Race **B** | Height **5-10** | Weight **190** | Hair **BLK** | Eyes **BRO** | Scars, Marks, Tattoos |
|---|---|---|---|---|---|---|

## EMERGENCY CONTACT INFORMATION

| Name: | Phone: | Relation: |
|---|---|---|

## MEDICAL OBSERVATIONS / QUESTIONS

| Allergies | Epilepsy | High Blood Preasure | Tuberculosis | Blood Type | Female Only : |
|---|---|---|---|---|---|
| Arthritis | Fainting Spells | HIV / AIDS | Ulcers | | Subject is Pregnant |
| Asthma | Heart Conditions | Psychiatric Disorder | Venerial Disease | | Taking Birth control pills |
| Diabetes | Hepatitis | Seizures | Other (Explain) | | Recently Delivered |

Officer
Observations :

Medical Questions
asked of Arrestee :

## MEDICATIONS

| Medication | Dosage | Frequency 0 | Prescribed By | Start Date / / : : | Refils 0 |
|---|---|---|---|---|---|

## DECLARATION

By Signing below, I acknowledge that to the best of
my knowledge the above information is true and correct.

X

_____          _____
Officer / Deputy                              Date

_____
Subject in Custody

## COMMENTS

# Exhibit D
# Affidavit of Nathan Gardner

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **MARSHALL E. BRANDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:07-cv-466-MHT-SRW** |
| | ) | |
| **DENNIS MEEKS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>AFFIDAVIT OF NATHAN GARDNER</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF COVINGTON** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Nathaniel Gardner, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Nathan Gardner.  I am over the age of nineteen and competent to make this affidavit.

2.      I am a Corrections Officer at the Covington County Jail.  I have served in this position for 7 months.  Prior to becoming a Corrections Officer, I served as the training administrator for Valor Security Services.  I also was director of security at the Mountain Villa Apartment Complex in Birmingham, Alabama.

3.      On May 22, 2007, a group of inmates were returning from Chapel, where a minister from outside the jail provides services for the inmates at least once a week.  Marshall Brandon attended Chapel that day.

4.    One week earlier, an inmate was caught sneaking contraband into the jail when returning from Chapel. That inmate had hidden the contraband in his Bible.

5.    Because of the earlier problems with contraband coming from Chapel, Officers Ricky Coleman and Jeremy Lane, and I decided to strip search five of the inmates returning from Chapel.

6.    Officer Coleman and I selected the inmates to be searched. Officer Lane suggested that we search Marvin Bryant as well because he had been caught with the contraband the week earlier. Mr. Brandon volunteered himself to be searched.

7.    All five inmates were placed in holding cell 1 in the booking room, and were searched one by one. The searches were performed in accordance with the jail strip search policy.

8.    During his search, I heard Mr. Brandon begin mouthing off to Officer Lane. I heard him make several comments about his penis. I specifically remember Mr. Brandon asking Officer Lane if he wanted to see his penis. I understood these comments as an effort by Mr. Brandon to intimidate Officer Lane.

9.    After Mr. Brandon asked Officer Lane if he wanted to see his penis, I heard Officer Lane say that he did not want to see it.

10.    I did not hear Officer Lane say anything to Mr. Brandon during the search about his penis, nor did hear him say anything about an "Alabama black snake."

11.    Mr. Brandon never mentioned to me that Officer Lane said anything about his penis or an "Alabama black snake."

12.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.


Executed on this the ___26___ day of July, 2007.


_____
Nathan Gardner


**SWORN TO** and **SUBSCRIBED** before me this _26_ day of July, 2007.


_____
NOTARY PUBLIC

My Commission Expires: ___1-29-09___

# Exhibit E
# Affidavit of Ricky Coleman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **MARSHALL E. BRANDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:07-cv-466-MHT-SRW** |
| | ) | |
| **DENNIS MEEKS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### AFFIDAVIT OF RICKY COLEMAN

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF COVINGTON** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Ricky Coleman, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Ricky Coleman.  I am over the age of nineteen and competent to make this affidavit.

2.      I am a Sergeant at the Covington County Jail.  I have served in this position for about six months.  Prior to becoming a Sergeant, I served as a corrections officer for about one year.

3.      On May 22, 2007, a group of inmates were returning from Chapel, where a minister from outside the jail provides services for the inmates at least once a week.  Mr. Brandon attended Chapel that day.

4.      Officers Nathaniel Gardner and Jeremy Lane, and I decided to strip search five of the inmates returning from Chapel.

5.    Officer Gardner and I selected the inmates to be searched. Officer Lane suggested that we search Marvin Bryant as well because he had been caught with the contraband the week earlier. Mr. Brandon volunteered himself to be searched.

6.    All five inmates were placed in holding cell 1 in the booking room, and were searched one by one. The searches were performed in accordance with the jail strip search policy.

7.    I did not hear Officer Lane say anything to Mr. Brandon during the search about his genitals, nor did hear him say anything about an "Alabama black snake."

8.    Mr. Brandon never mentioned to me that Officer Lane said anything about his genitals.

9.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.


Executed on this the _23ʳᵈ_ day of July, 2007.


_Ricky Coleman_
Ricky Coleman

**SWORN TO** and **SUBSCRIBED** before me this 23ʳᵈ day of July, 2007.

_Melissa Leslie_
NOTARY PUBLIC

My Commission Expires: MY COMMISSION EXPIRES APRIL 4, 2011

2

# Exhibit F
# Affidavit of Preston Hughes

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARSHALL E. BRANDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:07-cv-466-MHT-SRW |
| | ) | |
| DENNIS MEEKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF PRESTON HUGHES

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF COVINGTON | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Preston Hughes, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.     My name is Preston Hughes.  I am over the age of nineteen and competent to make this affidavit.

2.     I the Jail Administrator of the Covington County Jail.  I have served in this position for over five months.  Prior to becoming the Jail Administrator, I was a liaison officer with the Covington County Sheriff's Department and Corrections Department for two years. Prior to that I served as a senior chaplain for the Covington County Jail for four years.  I graduated from jail administration school in 1998, and I graduated from jail management school in 1999.

3.     I am familiar with Marshall Brandon as he has frequently been incarcerated in the Covington County Jail.  Most recently, Mr. Brandon was incarcerated in the Covington County

1

Jail on February 6, 2007, for theft in the third degree, possession of a forged instrument in the second degree, and violation of probation.

4.    I am aware that in his Complaint, Mr. Brandon alleges that he alleges that he was improperly strip-searched by a corrections officer in the Covington County Jail.

5.    It is the policy of the Covington County Jail that all strip searches be performed by a member of the same sex in a designated room where only the inmates being searched and the officer conducting the search are present. During the strip search the inmate must remove his shoes, socks, and suit, but is not required to remove his underwear. The searching officer then inspects the inmate's clothing to determine if any contraband is hidden inside. Invasive cavity searches are not permitted, and the searching officer may not make any physical contact with the inmate during the search.

6.    I am aware that in his Complaint, Mr. Brandon alleges that he alleges that he was sexually harassed during a cell search by a corrections officer in the Covington County Jail.

7.    It is the policy of the Covington County Jail that during a cell search, the inmate occupant will be treated courteously and respectfully by the searching officer. All bedding and inmate property will be searched and any contraband will be removed from the cell. Any items strung across the cell will be removed, because it is against jail policy for an inmate to hang any item in the cell that detracts from visibility into the cell.

8.    It is the policy of the Covington County Jail that no employee of the jail shall participate in sexual harassment of any co-employee or inmate. Sexual harassment includes any sexual comments, jokes, or conversations that make either party feel uncomfortable, or any physical contact that is sexual in nature and makes either party feel uncomfortable. Any complaint of sexual harassment will be investigated by the Jail Administrator, and any

2

perpetrator of sexual harassment will be subject to employee discipline, including suspension or termination.

9.     Had Officer Lane touched Mr. Brandon in the way he alleges during the cell search, he would have violated the Covington County Jail's Cell Search policy and Sexual Harassment Policy.

10.     It is the policy of the Covington County Jail that all inmates are permitted to submit grievances to the jail administration and that each grievance will receive a response. Inmate grievance forms are made available to inmates upon request, and upon completion, they should be delivered to the Jail Administrator. The Jail Administer will issue a written response to the inmate's grievance, and if the inmate is not satisfied with that response, he may appeal the grievance to the Sheriff in writing on another grievance form within 72 hours.

11.     Mr. Brandon filed a grievance, and after investigating his claims, I informed him that I found no merit in his allegations. To my knowledge, he did not file an appeal according to the grievance policy.

12.     Attached to the Defendants' Special Report are true and correct copies of the Plaintiff's inmate and medical records. These records are prepared and kept in the regular course of business of the Coffee County Jail.

13.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the ___26___ day of July, 2007.

_____
Preston Hughes

**SWORN TO** and **SUBSCRIBED** before me this _26_ day of July, 2007.

_____
NOTARY PUBLIC

My Commission Expires: _1-29-09_____

4

# Exhibit G
# Affidavit of Martin Caldwell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **MARSHALL E. BRANDON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 2:07-cv-466-MHT-SRW** |
| | ) |
| **DENNIS MEEKS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## AFFIDAVIT OF MARTIN CALDWELL

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF COVINGTON** | ) |

1.     My name is Martin Caldwell.  I am over the age of nineteen and competent to make this affidavit.

2.     Until July 27, 2007, I was an inmate in the Covington County Jail.  On that day, I was transferred to the Butler County Jail, and I am now in the Kilby Correctional Facility in Mt. Meigs, Alabama.

3.     I am familiar with Marshall Brandon, because were housed in the same cell block in the Covington County Jail.

4.     On May 22, 2007, a random shakedown was conducted on several inmates after church in Cell Block D.

5.     Marshall Brandon talked to me after the shakedown about how he was going to get "paid" because he "hollered like a panther" when Jeremy Lane tried to search him.  Marshall Brandon told me that when Officer Lane tried to search him, he had a lighter stuck to his inner

thigh, and that as Officer Lane was patting down his legs, he yelled, "Why you touching my dick? Why you touching my dick?" He told me he did this to deter Officer Lane from continuing the search so that the lighter wouldn't be discovered.

6.    Marshall Brandon told me that he was not telling the truth about Officer Lane touching his penis.

7.    Marshall Brandon also told me, "I got 'em now, I got 'em now." He told me that he was going to bring a lawsuit and "get paid."

8.    Marshal Brandon paid an inmate money to sign his Complaint and to lie to Sergeant Motley about what that inmate saw and heard during the shakedown.

9.    He also offered other inmates money to lie for him. He told them to "stick with him," and that he would "look out for them and take care of them." That sounded to me like he was promising them money if they would lie for him.

10.    This affidavit was made of my own free will. No threats were made to me physically or verbally to make this affidavit, and no special treatment was offered to me for making this affidavit.

11.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the 9th day of August, 2007.

*Martin Caldwell*
Martin Caldwell

**SWORN TO** and **SUBSCRIBED** before me this 9th day of August, 2007.

*Perry O. Woods*
NOTARY PUBLIC

My Commission Expires: _June 2, 2011_

3